UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---------------------------------------------------------X
THE NETHERLANDS INSURANCE COMPANY,   :     Docket: 1:20-cv-
                                     :
                  Plaintiff,         :
                                     :
-vs.-                                :
                                     :
ACADIA INSURANCE COMPANY,            :
                                     :
                  Defendant.         :
---------------------------------------------------------X

## COMPLAINT FOR DELARATORY RELIEF

The plaintiff, The Netherlands Insurance Company ("Netherlands"), by and through its undersigned counsel, brings this *Complaint* and respectfully states as follows:

### PARTIES

1. Netherlands is a New Hampshire insurance company that maintains its principal place of business at 175 Berkeley Street in Boston, Massachusetts.

2. The defendant, Acadia Insurance Company ("Acadia"), is an Iowa insurance company that maintains its principal place of business in Westbrook, Maine.

### NATURE OF THE ACTION

3. Acadia sold an insurance policy that obligates it to defend and indemnify Netherlands' insured, Marceau Construction Corporation ("Marceau"), against an underlying personal-injury action that is pending in the Middlesex County Superior Court, on a primary basis and without contribution from Netherlands.

4. Acadia has refused to defend or to indemnify Marceau against the underlying case. As a result, Netherlands has been forced to incur considerable cost and expense to defend Marceau against the underlying action.

5.   Acadia has refused to explain its coverage position, and to date it has declined to acknowledge demands that it honor its contractual obligations to Marceau.

## JURISDICTION & VENUE

6.   This court has jurisdiction over this action for declaratory relief pursuant to 28 U.S.C. § 2201 *et seq*. and 28 U.S.C. § 1332(a).  The citizenship of the parties is completely diverse, and the amount in controversy, exclusive of interest and costs, exceeds the sum of $75,000.

7.   Venue is proper in this judicial district because the accident that gave rise to the underlying action occurred in Massachusetts, the underlying action is pending in Massachusetts, and the parties' policyholders are Massachusetts companies.  Accordingly, a substantial part of the events or omissions giving rise to this claim occurred in Massachusetts.  *See* 28 U.S.C. § 1391(b)(2).

## RELEVANT FACTS

### The Construction Contracts

8.   Marceau is a Massachusetts general contractor that maintains its principal place of business in Methuen.

9.   Since at least March 1, 2013, Marceau has been party to a *Master Contract* with a separate Massachusetts corporation called Building Maintenance Corporation, which does business as U.S. Roofing.  U.S. Roofing has its principal office in North Reading, and it maintains a mailing address in Peabody.

10.   The *Master Contract* defines Marceau as the "Contractor" and U.S. Roofing as the "Subcontractor".  A true and correct copy of the *Master Contract* is attached hereto at **Exhibit A**.

11. The *Master Contract* contains an insurance term at Article 5, which states:

> 5.1 Prior to mobilization onto the site and commencement of work, the Subcontractor shall obtain and pay for the following insurance coverages: Workmen's compensation, Public Liability including Contractual Liability, Property Damage, and any other insurance coverage which may be necessary as required by the Owner, Contractor, or State Law.  The minimum limits are as follows:
>
> | | |
> |---|---|
> | Automobile: | $1,000,000 Bodily Injury and Property Damage |
> | General Liability: | $1,000,000 each occurrence |
> | | $2,000,000 Aggregate |
> | Workers' Compensation: | Per Statute |
> | | $500,000/$500,000/$500,000 |
>
> The Subcontractor shall furnish to the Contractor Insurance Certificates to prove coverage for the required insurance.  Marceau Construction Corporation is to be named as an additional insured on all required insurance.

12. The *Master Contract* also contains general conditions that appear in Article 7, which state, in relevant part:

> 7.10 Indemnification
>
> 7.10.1 To the fullest extent permitted by law, the Subcontractor shall indemnify, defend and hold harmless the Owner, the Architect, and the Contractor and all of their agents and employees from and against all claims, damages, losses and expenses, including but no[t] limited to attorneys' fees arising out of or resulting from the performance of the Subcontractor's Work under this Subcontract, provided that any such claim, damages, loss or expense is attributable to bodily injury, sickness, disease, or death…to the extent caused in whole or in part by any negligent act or omission of the Subcontractor or anyone directly or indirectly employed by him or anyone for whose acts he may be liable, regardless of whether it is caused in part by a party indemnified hereunder.  Such obligation shall not be construed to negate, or abridge, or otherwise reduce any other right or obligation of indemnity which would otherwise exist as to any part or person described in this Paragraph 7.10.
>
> 7.10.2 In any and all Claims against the Owner, the Architect, or the Contractor or any of their agents or employees by any employee of the Subcontractor, anyone directly or indirectly employed by him or anyone for whose acts he may be liable, the indemnification obligation under this Paragraph 7.10 shall no[t] be limited in any way by any limitation on the amount or type of damages, compensation or benefits payable by or for the Subcontractor under workers' or workmen's compensation acts, disability benefit acts or other employee benefit acts.

13. In March 2016, Marceau and U.S. Roofing agreed to extend the *Master Contract* for a five-year period, until March 1, 2021.  A true and correct copy of the letter agreement memorializing the extension is attached hereto at **Exhibit B**.

### The McDonald's Project

14. In the spring of 2016, McDonald's USA, LLC, hired Marceau to serve as the general contractor for the construction of a new McDonald's fast-food restaurant at 173 Washington Street in Hudson, Massachusetts.

15. Marceau subcontracted roofing work for the project to U.S. Roofing.

16. On or about June 15, 2016, Marceau and U.S. Roofing entered into a *Supplemental Agreement* that, among other things, ratified and affirmed the *Master Contract*. A true and correct copy of the *Supplemental Agreement* is attached hereto at **Exhibit C**.

17. Work on the project proceeded through the summer and into the fall of 2016.

## The Underlying Accident

18. U.S. Roofing's project team for the work it was hired to perform included an individual named Chris Legacy, who served as the foreman, and a laborer named Michael Gross. Upon information and belief, both Mr. Legacy and Mr. Gross are residents of Massachusetts. *See* **Exhibit D** (true and correct copy of Mr. Gross' interrogatory responses in the underlying action).

19. U.S. Roofing's team arrived at the worksite in Hudson early on the morning of November 7, 2016, between 6:45 and 7:00 am. *See* **Ex. D**. That day, they were planning to complete installation of a rubberized roof on the restaurant.

20. When the team arrived, it was daylight, but the sun had not fully risen.

21. A thin layer of ice had formed on the roof overnight. The team saw that the roof was white in color: the frost was visible, and it crunched audibly when stepped on.

22. As a result of the ice, the roof was very slippery.

23. Mr. Gross recommended to Mr. Legacy that the team should wait until the sun had had some time to melt the ice before the team proceeded to work on the roof. *See* **Ex. D**.

24. In response, Mr. Legacy stated words to the effect of "we are going to get up on this f***ing roof and finish this f***ing job today." *See* **Ex. D**.

25. At Mr. Legacy's direction, Mr. Gross got up on the roof and began to work.

26.     Between 7:30 and 7:50 am, Mr. Gross slipped on the ice and fell hard on his left side, sustaining bodily injury.  Among other things, Mr. Gross tore the rotator cuff in his left shoulder, herniated discs in his neck, and sustained other injuries to his dominant left arm and hand.  *See* **Ex. D**.

### The Underlying Lawsuit

27.     On April 16, 2019, Mr. Gross and his wife commenced a civil action against Marceau in the Middlesex County Superior Court captioned *Michael Gross and Laurie Cochran v. Marceau Construction Corporation*, No. 1981CV01061.  The complaint asserts claims for negligence and loss of consortium; the plaintiffs seek to recover $696,313.38.  A true and correct copy of that complaint with its civil cover sheet is attached hereto at **Exhibit E**.

28.     On November 27, 2019, Marceau commenced a third-party action for contractual indemnification and contribution against U.S. Roofing.  A true and correct copy of the third-party complaint is attached hereto at **Exhibit F**.

29.     U.S. Roofing answered the third-party complaint on December 2, 2019.  A true and correct copy of that answer is attached hereto at **Exhibit G**.

30.     On January 21, 2020, Mr. Gross served answers to interrogatories that had been propounded to him by Marceau.  *See* **Ex. D**.

### The Netherlands Insurance Policy

31.     Netherlands insured Marceau under a commercial general liability insurance policy, No. CBP 8333451, for the period of August 8, 2016, to August 8, 2017.  A true and correct copy of the declarations pages for the Netherlands insurance policy is attached hereto at **Exhibit H**.

32.     Marceau tended the *Gross* lawsuit to Netherlands.

33. Netherlands accepted the obligation to defend Marceau against the *Gross* lawsuit under its policy's Coverage **A**, subject to all of the terms and conditions of its insurance policy.

34. The Netherlands policy contains an "other insurance" provision, which in relevant part states:

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows.

**a. Primary Insurance**

This insurance is primary except when **b.** below applies.

**b. Excess Insurance**

This insurance is excess over:

**(2)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement.

When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit".

The policy form containing this provision is attached hereto at **Exhibit *I*.**

## The Acadia Insurance Policy

35. Acadia sold a general liability insurance policy, No. CPA 5232495-10, to U.S. Roofing for the period of December 23, 2015, to December 23, 2016. A true and correct copy of the Acadia policy is attached hereto at **Exhibit J**.

36. The Acadia policy has limits of $1,000,000 per occurrence.

37. The Acadia policy contains a *Commercial General Liability Coverage Form*, No. CG 00 01 12 07, which insures against claims for bodily injury caused by an accident.

38. The Acadia policy contains a separate *General Liability Expansion Endorsement*, No. CL CG 04 92 02 12, which states:

**F. ADDITIONAL INSURED BY CONTRACT OR AGREEMENT**

The following is added to **SECTION II – WHO IS AN INSURED**, Paragraph **2**:

> Any person(s) or organization(s) for whom you have agreed in a written contract or agreement that such person(s) or organization(s) be added as an additional insured to your policy.
>
> **(1)** Such person(s) or organization(s) is an additional insured only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused in whole or in part, by:
>
> **(a)** Your acts or your omissions; or
>
> **(b)** the acts or omissions of those acting on your behalf;
>
> In the performance of your ongoing operations under the written contract or agreement.
>
> \*\*\*
>
> **(4)** Primary and Non-Contributory – The insurance provided to the additional insured is primary to and will not seek contribution from the additional insured's own insurance.

39. In light of the foregoing, for purposes of the *Gross* lawsuit, Marceau is an additional insured on the Acadia policy. Such coverage is provided by an endorsement, rendering the Netherlands policy's coverage excess.

40. In light of the foregoing, for purposes of the *Gross* lawsuit, Acadia is obligated to defend and to indemnify Marceau, on a primary basis and without contribution from Netherlands.

### Netherlands' Tender

41. Prior to the commencement of the *Gross* lawsuit, Netherlands advised Acadia of Mr. Gross' fall and requested that Acadia defend and indemnify Marceau against any resulting claim.

42. On February 21, 2018, Acadia issued a one-page letter in which it acknowledged that it would have an obligation to defend and indemnify Marceau against a claim for bodily injury that was caused, in whole or in part, by any negligent act or omission of U.S. Roofing. A true and correct copy of Acadia's letter is attached hereto at **Exhibit K**.

43. However, Acadia's letter went on to state that, as of the date thereof, "there is no information to suggest that this loss was caused by [U.S. Roofing's] negligent acts or omissions."

44. On January 21, 2020, Mr. Gross' interrogatory responses showed that U.S. Roofing's own negligence caused Mr. Gross' fall, at least inasmuch as Mr. Legacy instructed Mr. Gross to work on the roof at the McDonald's restaurant notwithstanding that the roof was covered in ice and very slippery.

45. On May 19, 2020, Netherlands formally tendered the defense and indemnity of the *Gross* lawsuit to Acadia. A true and correct copy of the tender letter is attached hereto at **Exhibit L**.

46. Acadia contends that it responded to Netherlands on June 2, 2020, although Netherlands has no record of receiving Acadia's letter prior to its receipt by counsel on November 20, 2020. A true and correct copy of Acadia's letter is attached hereto as **Exhibit M**.

47. In its letter, Acadia takes the position that U.S. Roofing's obligations under Section 7.10.1 of the *Master Contract* are limited to situations where U.S. Roofing itself is negligent, and even then the obligations extend only to the proportional extent of U.S. Roofing's own negligence.

48. Acadia reaffirmed its disclaimer because the underlying complaint in the *Gross* lawsuit asserted theories of liability only against Marceau, and because the plaintiff did not allege that he was himself negligent in the performance of his duties.

49. Acadia's position is directly contrary to Massachusetts law. *See*, *e.g.*, *Collins v. Kiewit Constr. Co.*, 40 Mass. App. Ct. 796 (1996),

50. Moreover, notwithstanding Mr. Gross' interrogatory responses, Acadia further contends that, as of June 2, 2020, there was no allegation that U.S. Roofing or Mr. Gross did anything to bring about the accident.

51. Acadia is mistaken because Mr. Gross gave sworn statements that U.S. Roofing's own project foreman gave instructions to commence work, notwithstanding his actual knowledge that the roof was icy and therefore very slippery.

## CLAIMS FOR DECLARATORY RELIEF

### COUNT I – EQUITABLE CONTRIBUTION

52. Netherlands incorporates by reference and realleges all of the allegations in Paragraphs 1-51 above.

53. Under the doctrine of equitable contribution, where multiple insurers provide coverage for a given loss to their mutual insured, an insurer that pays more than its share of the costs of defense and indemnity may require contribution from the co-insurer.

54. Equitable contribution permits reimbursement to the insurer that paid on the loss for the excess it paid over its required share of the obligation.

55. Acadia was obligated to pay for the entire defense of Marceau, under the plain terms of the insurance policy that Acadia sold to U.S. Roofing, on a primary and non-contributory basis.

56. Because Acadia was required to provide primary insurance coverage to Marceau on a primary and non-contributory basis, any obligation that Netherlands might have to Marceau is wholly excess.

57. Because Acadia has entirely refused to pay for the defense of Marceau, at least since May 19, 2020, Netherland was required to pay defense costs and expenses that Acadia should have borne.

58. In fairness and equity, Netherlands is entitled to be reimbursed in full by Acadia for all of the costs of defending Marceau since May 19, 2020.

## COUNT II – EQUITABLE SUBROGATION

59. Netherlands incorporates by references and realleges all of the allegations in Paragraphs 1-58 above.

60. Under the doctrine of equitable subrogation, a party that does not act as a volunteer and that pays the debt of another is equitably subrogated to the right to seek recovery for the sums it has paid.

61. Acadia was obligated to pay for the entire defense of Marceau, under the plain terms of the insurance policy that Acadia sold to U.S. Roofing, on a primary and non-contributory basis.

62. Because Acadia was required to defend and indemnify Marceau on a primary and non-contributory basis, any obligation that Netherlands might have to Marceau is wholly excess.

63. Because Acadia has entirely refused to pay for the defense of Marceau, Netherlands was required to pay defense costs and expenses that Acadia should have borne, at least since May 19, 2020.

64. In fairness and equity, Netherlands is entitled to be reimbursed in full by Acadia for all of the costs of defending Marceau since May 19, 2020.

## COUNT III – UNJUST ENRICHMENT

65. Netherlands incorporates by reference and realleges all of the allegations in Paragraphs 1-64 above.

66. In Massachusetts, a claim for unjust enrichment arises where there has been "unjust enrichment of one party and unjust detriment to another party." *See Mass. Eye & Ear Infirmary v. QLT Phototherapeutics*, 552 F.3d 407 (1st Cir. 2009).

67. Acadia was obligated to pay for the entire defense of Marceau, under the plain

terms of the insurance policy that Acadia sold to U.S. Roofing, on a primary and non-contributory basis.

68. Because Acadia was required to defend and indemnify Marceau on a primary and non-contributory basis, any obligation that Netherlands might have to Marceau is wholly excess.

69. Because Acadia has entirely refused to pay for the defense of Marceau, Netherlands was required to pay defense costs and expenses that Acadia should have borne, at least since May 19, 2020.

70. In fairness and equity, Netherlands is entitled to be reimbursed in full by Acadia for all of the costs of defending Marceau since May 19, 2020.

## COUNT IV – DECLARATORY JUDGMENT

71. Netherlands incorporates by reference and realleges all of the allegations in Paragraphs 1-70 above.

72. Netherlands has tendered the defense and indemnity of Marceau to Acadia.

73. At least for purposes of the *Gross* lawsuit, Marceau is an additional insured under the insurance policy that Acadia issued to U.S. Roofing.

74. At least for purposes of the *Gross* lawsuit, the additional-insured coverage available to Marceau under the Acadia policy applies on a primary and non-contributory basis.

75. At least for purposes of the *Gross* lawsuit, any obligations that Netherlands has to Marceau are wholly excess, and attach only after the exhaustion, of the Acadia policy.

76. Accordingly, Netherlands is entitled to a declaration that Acadia is obligated to defend Marceau against the *Gross* lawsuit, on a primary basis and without any contribution from Netherlands.

77. Netherlands is further entitled to a declaration that Acadia is obligated to

indemnify Marceau against the *Gross* lawsuit, on a primary basis and without any contribution from Netherlands.

*   *   *

**WHEREFORE**, Netherlands requests that the Court:

a. Enter judgment in its favor on all counts;

b. Order Acadia to reimburse Netherlands for the total cost of all legal fees and costs that it has incurred from May 19, 2020, to the date of judgment in the defense of Marceau in the *Gross* lawsuit;

c. Declare that Acadia is required to defend and to indemnify Marceau against the *Gross* lawsuit, on a primary basis and without any contribution from Netherlands, subject only to exhaustion of the Acadia policy;

d. Award to Netherlands its reasonable costs and attorneys' fees; and

e. Grant such other, further, and different relief in favor of Netherlands as to the Court seems just and proper.

Respectfully submitted,

**THE NETHERLANDS INSURANCE COMPANY**

By its attorneys,

SULLOWAY & HOLLIS, P.L.L.C.

By:     */s/ Alexander G. Henlin*
Alexander G. Henlin (BBO # 660474)
9 Capitol Street
Concord, New Hampshire 03301
(603) 223-2800 telephone
(603) 226-2404 facsimile
ahenlin@sulloway.com

Dated: December 11, 2020